IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

STEVEN SMITH,  #184725,          :

     Plaintiff,               :

vs.                           :          CIVIL ACTION 16-0588-CG-N

G.  SALTER, *et al*.,         :

     Defendants.           :

REPORT AND RECOMMENDATION

Plaintiff Steven Smith, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983.  This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R).  After careful review, it is recommended that Defendant Corizon, LLC's Motion for Summary Judgment be GRANTED.  It is further recommended that the Motion for Summary Judgment of Defendants, Salter, Bolar, Brown, and Dailey, be GRANTED, and that Plaintiff Smith's action be dismissed with prejudice.

**I.  Summary of Allegations.**

Smith alleges in the complaint that on June 11, 2016, he was assaulted and stabbed by another inmate in Holman Prison's B dorm when no guard was present at his stationed post. (Doc. 1 at 4).  The guard, Officer Salter, is alleged to have been outside the dorm gate at the time the attack occurred.  (*Id*. at 4-5).  Smith claims that the attacker (nicknamed "Toe Toe") assaulted him from behind with a knife (stabbing his left shoulder) and chased him with a broken broomstick.  (*Id*. at 4).  Smith ran from the assailant, jumping the wall in the center of the dorm, to get to the gated entrance to the dorm.  (*Id*. at 5).  As soon as Smith approached the entrance

1

gate, the cubicle officer rolled the door open, and Smith ran out of the dorm. (Doc. 33 at 19). As Smith exited the dorm, he alleges he saw Officer Salter and Lieutenant Bolar standing outside of the bars looking into the dorm. (*Id.*). Smith was immediately taken to the prison's infirmary, where the examination revealed a stab wound to his left shoulder and abrasions to his arms and legs. (Doc. 30-9 at 13). Smith was then transferred to Atmore Community Hospital's Emergency Room, where xrays of his shoulder confirmed there was no fracture, dislocation, or joint damage and that the puncture wound did not require sutures. (Doc. 30-9 at 37, 39-40). Smith claims the prescribed treatment for his injury was to daily clean and bandage the stab wound for 25 days. (*Id.*). Smith alleges, however, that he only received wound treatment eleven (11) days out of the prescribed twenty-five (25) days, resulting in the development of an infection in the stab wound. (*Id.*).

One of the days Smith missed his wound treatment was July 4, 2016. Smith alleges on this date he was lured out of his cell by Officer Dailey and into the shift officer where Lieutenant Brown assaulted him. (Doc. 24 at 1). Smith asserts that while he was handcuffed with his hands behind his back, Lieutenant Brown knocked him backwards, where he fell over a "locker box." (Doc. 1 at 10). Officer Daily helped Smith up, but following the alleged assault, Smith was not taken to the infirmary for a body chart to check for injuries from his fall or for the scheduled wound cleaning. (*Id.*; Doc. 33 at 21-22).

Smith brings this suit against Defendants for violations of the Eighth Amendment of the constitution.[1] Smith claims Gavin Salter and Regina Bolar are liable for failing to protect him

---

[1]     In his complaint, Smith alleged that Warden Rabon, Warden Mitchell, Warden Stewart, Captain Fails, Captain Rouse, and Warden Davenport were liable for placing Smith in a segregation cell following the attack and not disciplining the alleged assailant in any way. (Doc. 1 at 11-14, 16). The undersigned entered a report and recommendation, that was adopted by this

from the inmate attack on June 11, 2016; Corizon, LLC is liable for its failure to provide

adequate medical care; Deveron Brown for using excessive force against him on July 4, 2016

and Ervin Dailey for his failure to intervene in the assault by Lieutenant Brown. (Docs. 1, 24).

For relief, Smith requests $600,000.00 in punitive damages and $10,000.00 in compensatory

damages from each defendant in their individual and official capacities.  (Doc. 1 at 7).

Defendants have answered the suit and denied all allegations against them and asserted

immunity defenses.[2]  (Docs. 10, 30).  In combination with their Answer, Defendants have

---

court on July 21, 2017, that the claims against these defendants should be dismissed pursuant to
28 U.S.C. § 1915(e)(2)(B)(i) and (ii).  (*See* Docs. 21, 22).

Based on *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 416 (1995), the
court concluded an inmate's placement in segregation only violates the Constitution if the
placement will affect the duration of his sentence or if the placement "imposes [an] atypical and
significant hardship . . . in relation to the ordinary incidents of prison life."  *Id.* at 484, 486, 115
S. Ct. at 2300.  The court found that Plaintiff's confinement to segregation for three months did
not give rise to a liberty interest protected by the due process clause.  As a consequence, Smith
failed to state a claim upon which relief could be granted, and the claim was dismissed without
prejudice.  Additionally, Smith's claim that his assailant was not arrested or locked up and the
assailant did not receive a behavior citation or a disciplinary was determined to be without legal
merit and dismissed with prejudice as frivolous.

[2]       In his complaint, Plaintiff states that he is suing Defendants in their official and
individual capacities.  As state officers, Defendants Salter, Bolar, Brown, and Dailey are
absolutely immune from suit for damages in their official capacities. *See Harbert Int'l, Inc. v.
James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities
are protected from suit for damages under the Eleventh Amendment).  In addition, "[q]ualified
immunity protects government officials performing discretionary functions from suits in their
individual capacities unless their conduct violates 'clearly established statutory or constitutional
rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994
(11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666
(2002)). However, having found herein that Plaintiff's allegations do not establish a
constitutional violation, "there is no necessity for further inquiries concerning qualified
immunity." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001),
*overruled in part by Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565.

The Court also notes that, as private actors, the medical Defendant Corizon, LLC is not
entitled to immunity, whether qualified or absolute. *See Swann v. Southern Health Partners, Inc.*,
388 F.3d 834, 837 (11th Cir. 2004) ("The parties agree that as a private entity, SHP [a private
corporation employed by the County to provide medical care to inmates at the county jail] is not
entitled to assert a qualified immunity defense."); *Hinson v. Edmond*, 205 F.3d 1264, 1265 (11th

submitted Special Reports, which include evidentiary support in the form of affidavits, medical records, and prison records.  (Docs. 17, 30).  The court has converted Defendants' pleadings into motions for summary judgment, and Smith has responded to the motions. (*See* Docs. 23, 31, 33). These motions are now ripe for consideration. (Docs. 23, 31).

## II.  Summary Judgment Standard.

Summary Judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)[3]; *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'"(emphasis omitted)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

---

Cir. 2000) (a "privately employed prison physician is ineligible to advance the defense of qualified immunity"); *Edwards v. Alabama Dep't of Corrs.*, 81 F. Supp. 2d 1242, 1254 (M.D. Ala. 2000) (a private entity contracting with a state to provide medical services to state inmates "is not entitled to qualified immunity...."). Similarly, the Court is aware of no case extending absolute immunity to private actors providing medical services to state inmates.

[3]      Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts.  The standard for granting summary judgment[, however,] remains unchanged. . . . The amendments [have] not affect[ed] continuing development of the decisional law construing and applying these phrases." Fed. R. Civ. P. 56 advisory committee's note on 2010 amendments.

*Celotex*, 477 U.S. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id*. at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id*. at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson*, 477 U.S. at 255.

*ThyssenKrupp Steel USA, LLC v. United Forming, Inc*., 926 F. Supp. 2d 1286, 1289-90 (S.D. Ala. Jan. 29, 2013) (citations omitted).

The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts.  A genuine dispute requires more than "some metaphysical doubt as to material facts."  *Garczynski*, 573 F.3d at 1165 (internal citations omitted).   A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment.  *Id*.  In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."  *Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995).  More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007); *see also Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. Aug. 29, 2011) ("In cases

5

where opposing parties tell different versions of the same events one of which is blatantly contradicted by the record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations." (citations omitted) (unpublished)).[4]

## III. Discussion.

"In order for a plaintiff to establish a claim under 42 U.S.C. § 1983, he must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under the color of state law." *Martinez v. Burns*, 459 F. App'x 849, 850-851 (11th Cir. 2012) (citing *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005)).  The parties do not dispute that Defendants were acting under color of state law, and Smith seeks redress pursuant to the Eighth Amendment.

"The Eighth Amendment, applicable to the states through the Fourteenth Amendment, governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison." *Id.* (citing *Farrow v. West*, 320 F.3d 1235, 1242 (11th Cir. 2003); *Bass v. Perrin*, 170 F.3d 1312, 1316 (11th Cir. 1999)).  The Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.  "'[T]he unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'"  *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986) (some internal quotation marks omitted).  "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'"  *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981).

---

[4]     "Unpublished opinions are not considered binding precedent, but may be cited as persuasive authority."  11th Cir. R. 36-2.

For prisoners, "[t]he Eighth Amendment can give rise to claims challenging specific conditions of confinement, the excessive use of force, and the deliberate indifference to a prisoner's serious medical needs." *Thomas v. Bryant*, 614 F.3d 1288, 1303 (11th Cir. 2010) (citations omitted).  Additionally, "[b]eyond just restraining prison officials from inflicting 'cruel and unusual punishments' upon inmates, '[t]he Amendment also imposes duties on these officials, who must ... "take reasonable measures to guarantee the safety of the inmates."'" *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1319-20 (11th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)).

### A.  Failure to Protect Claim.

A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," "a standard that incorporates due regard for prison officials' 'unenviable task of keeping dangerous men in safe custody under humane conditions.'" *Farmer*, 511 U.S. at 844-45 (citations omitted). However, "a prison custodian is not the guarantor of a prisoner's safety", *Purcell ex rel. Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1321 (11th Cir. 2005) (citation omitted), and "[i]t is not[] every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.  Prison officials must "take reasonable measures to guarantee the safety of the inmates", *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 3200, 82 L. Ed. 2d 393 (1984), but there is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not. . . ." *Farmer*, 511 U.S. at 838.  It is not enough that an inmate proves that the defendant should have known of the risk, but did not, as actual knowledge is the key. *See, e.g., Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996).

Smith claims that the lack of Defendant Salter's security presence in his dorm on June 11, 2016, caused his attack;[5] thus, Smith must show that Defendant Salter not only left his post but that he did so with the knowledge that Smith was at risk of a serious injury.  Taking Smith's allegations as true, there is simply no probative evidence sufficient to show deliberate indifference of "an objectively substantial serious risk of harm" posed by inmate "Toe Toe" (or any inmate) to Smith prior to the attack on June 11, 2016.  *Cf.*, *McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991), *overruled in part on other grounds by Farmer*, 511 U.S. at 828 (A plaintiff "normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety.").  Specifically, Smith presents no evidence that even he was aware or fearful of a possible attack at the time it occurred.[6] Additionally, Smith has failed to show Defendant Salter "had subjective knowledge of a generalized, substantial risk of serious harm from inmate violence." *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1583 (11th Cir. 1995).  In fact, the record is void of facts proving or indicating any

---

[5]     In response to this motion, Smith cites *Krein v. Norris*, 309 F.3d 487 (8th Cir. 2002) as support for his argument that Defendants are liable for failing to protect him not from a surprise or unforeseen attack but because "they knew of and created an environment which posed a high probability of harm to all inmates who are housed in a barrack type area." (Doc. 33 at 7).

The court in *Krein* found that the defendants failed to abide by staffing requirements, which created an environment that posed a risk to all inmates in the barracks area.  Specifically, the evidence showed the prison had one guard for three barracks housing 150 inmates, and the barrack that the plaintiff was housed in was shown to have five times the level of violence of the other barracks.  *Krein*, 309 F.3d at 490.  The court further found that the prison was aware of these facts for over a year without making any staffing changes.

Smith, on the other hand, alleges that Salter was assigned to be in the dorm, but left his post unattended.  Additionally, the allegations in Smith's complaint focus on the actions or inactions of Defendants to his attack and treatment thereafter.  As such, it can only be said that Defendant Salter's failure to be at his guard post represents negligence at best and is a far cry from alleging, much less establishing, a conditions of confinement claim where defendants objectively understaffed the prison dorm and subjectively knew of an excessive risk of harm to Smith's health or safety and deliberately disregarded such risk.

[6]     Smith affirms by affidavit that he was talking to a friend in B dorm when he was stabbed from behind.  (Doc. 33 at 18).

subjective knowledge or recklessness on the part of Defendants Salter and Bolar.  And, it is incumbent on Smith to make such an evidentiary showing that a defendant drew the inference and "knowingly or recklessly 'disregard[ed the] risk [of harm] by failing to take reasonable measures to abate it,'" *Hale*, 50 F.3d at 1583 (quoting *Farmer*, 511 U.S. at 848, 114 S. Ct. at 1984), as "[m]erely negligent failure to protect an inmate from attack does not justify liability under § 1983. . . . The known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir.) (citations and internal quotations omitted), 496 U.S. 928, 110 S. Ct. 2624, 110 L. Ed. 2d 645 (1990).  Accordingly, Smith's failure to protect claim is not actionable under § 1983, and it is recommended that summary judgment be granted in favor of Defendant Salter on this claim.

**B.  Failure to Intervene Claim.**

In his complaint, Smith also claims that Defendants Salter and Bolar are liable for failing to protect him when they watched him being attacked and failed to act.  Specifically, Smith alleges:

> Bolar stood outside B dorm with Officer Salter and just watched the inmate assault me.  They never called a code nor did they ever apprehend the inmate.

(Doc. 1 at 5).  As previously stated, however, the record is void of facts to establish a failure to protect claim.  *Pro se* pleadings, however, are to be read liberally to determine "whether jurisdiction to consider[them] can be founded on a legally justifiable base." *Fernandez v. United States*, 941 F.2d 1488, 1491 (11th Cir.1991); *see also United States v. Jordan*, 915 F.2d 622,624–25 (11th Cir.1990) (The Court has an "obligation to look behind the label of a motion filed by a *pro se* inmate and determine whether the motion is, in effect, cognizable under a

different remedial statutory framework."). Based on a reading of Smith's allegations, the undersigned determines that he is attempting to assert a claim against Defendants for their alleged failure to intervene in the attack; therefore, the undersigned will review the claim as such.

The test put forth in this Circuit to establish if liability may attach to an officer who fails to intervene in an inmate-on-inmate fight is whether: 1) the inmate's physical assault created a substantial, objective risk of injury, (2) of which a defendant is subjectively aware, (3) the defendant was in a position to intervene, and (4) the defendant did not respond reasonably to the risk of injury. *Johnson v. Boyd*, 568 F. App'x 719, 724-25 (11th Cir. 2014).

Defendants affirm that on June 11, 2016, Officer Salter observed "activity going on in the back of Housing Unit B, where only night lights were on." (Doc. 30-5 at 1). Officer Salter then saw Smith jump the center wall of the dorm and run towards the entrance gate. (*Id*.). While opening the grill gate for Smith to escape, Officer Salter called a code for assistance in Dorm B. (*Id*.). Lieutenant Bolar, along with other officers, responded to the call. (Doc. 30-3 at 1). Smith informed the officers that the attacker went by the nickname "Toe Toe", but responding officers were unable to locate any inmate with the nickname. (*Id*.).

In opposition to this motion, Smith declares that as soon as he was stabbed he began to run. (Doc. 33 at 18). He asserts he was hit over the head a couple of times with the broomstick and began to run faster. (*Id*.). Smith then claims he jumped the center wall and ran towards the entrance gate "actually praying and hoping that the cubicle officer would not hesitate to open the door. And sure enough there was my prayer being answered, the door rolled open," (*Id*. at 19), as Defendant Salter rolled the gate open. Smith further avers that "as [he] ran out of the cellblock [he] could see Lt. Bolar and Officer Salter both standing outside the bars looking in."

10

(*Id.*).

Taking as true the version of events put forth by Smith, Smith has failed to establish his claim, and Defendants have demonstrated that they were not in a position to stop Smith's attack. *See Terry v. Bailey*, 376 F. App'x 894, 896 (11th Cir. 2010) (*citing Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998) (Liability for an officer's failure to intervene only attaches if a defendant was actually in a position to intervene.).  In fact, Smith fails to present any evidence that Defendants "stood and watched" the incident without taking action.  He does not indicate or allege that either defendant was seen standing at the bars "watching" when he was stabbed or being chased.  Smith's only allegation is that he saw Defendants standing at the bars when he exited the dorm, and the record fully corroborates this detail.

The undisputed facts confirm that Defendant Salter was outside the dorm when the attack occurred; furthermore, Defendant Bolar was not even present at the scene of the attack until it was ending.  *See Ledlow v. Givens*, 500 F. App'x 910, 914 (11th Cir. 2012) (holding that district court properly granted summary judgment to defendant correctional officer where plaintiff "presented no evidence that [officer] had the ability to reasonably insert himself between [the inmates] to stop the assault without additional help" nor had he presented "evidence ... as to how long this assault went on before intervention occurred.").  Additionally, Defendant Salter affirms and Smith does not dispute that the moment he observed Smith jump the center wall and run towards the dorm gate, he took appropriate and reasonable actions - immediately calling for assistance, opening the gate for Smith, and promptly obtaining medical assistance for him. Such actions negate claims of deliberate indifference or knowingly disregarding a risk of harm to Smith.  Consequently, the evidence reveals Defendants were not in close proximity to the attack or in a position to intervene but demonstrates they responded appropriately to the attack.  *Glispy*

11

*v. Raymond*, No. 06-14269, 2009 U.S. Dist. LEXIS 77087, 2009 WL 2762636, at *3 (S.D. Fla. Aug. 28, 2009) (discussing *Ensley*, 142 F.3d at 1407-08) (An officer who fails to intervene in a fight between inmates can only be held liable if he or she "was physically able and had a realistic chance to intervene and act in time to protect the inmate plaintiff."); *Ledlow v. Givens*, 500 Fed. App'x 910, 914 (11th Cir. 2012) (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1330-31 (11th Cir. 2008)) (The plaintiff has the burden of demonstrating that the defendant was in a position to intervene but failed to do so.).

Smith also asserts in his pleadings that Defendants failed to properly investigate the attack after it occurred. The record, however, refutes this claim: 1) The record before the court contains a photograph of the broken broomstick (Doc. 30-8 at 8), evidencing that Defendants located at least one of the weapons following the incident, and 2) Defendants' affidavits, and the prison's Incident Reports, confirm that Defendants attempted to discover the attacker, but with only a nickname to go by, the attacker was not located.[7]  (Docs. 30-3; 30-5; 30-6).

Accordingly, the undersigned concludes that a reasonable jury would not be able to find for Smith as the record is devoid of evidence to support the failure to intervene claim. *Cf. Stubbs v. Dudley*, 849 F.2d 83, 85-86 (2d Cir. 1988) (discussing deliberate-indifference standard in

---

[7]     Smith supports denial of this motion with the statement of Inmate Carsbia Taylor, which is self-styled as an affidavit. (Doc. 33 at 23). This "affidavit", however, is an unsworn declaration that does not meet the requirements of 28 U.S.C. § 1746 and, therefore, is not proper evidence to oppose a motion for summary judgment.
        The "affidavit", however, does not bolster Smith's claims. Inmate Taylor confirms in his statement that following the incident none of the inmates in B dorm knew who the attacker was. (Doc. 33 at 23). Inmate Taylor further argues that the officers failed to go in to the dorm to investigate the incident; as mentioned above, the record shows that the officers recovered the broken broomstick. Inmate Taylor also asserts that Smith gave him a sworn statement to pass along to Captain Fails which "gave [the attacker's] real name. Not any nickname." (Doc. 33 at 24). This is belied by Smith's own facts, as Smith affirms he did not and does not know the assailant's name. (Doc. 33 at 19).

context of 42 U.S.C. § 1983 claim based on failure to protect inmate from injuries caused by fellow inmates); *see also Mackay v. Farnsworth*, 48 F.3d 491, 492-93 (10th Cir. 1995) (finding no deliberate indifference by prison officials who failed to physically intervene in fight between plaintiff inmate and another inmate).  Therefore, the undersigned recommends that summary judgment be granted in favor of Defendants Salter and Bolar, and the claims against them dismissed.

### B.  Inadequate Medical Care.

Smith alleges that subsequent to the attack on June 11, 2016, he did not receive adequate medical treatment.  He asserts this claim against Defendant Corizon, LLC ("Corizon") for its alleged failure to provide daily wound cleaning "as medically required" (specifically, only calling him to the health care unit for wound rebandaging 11 out of 25 days).  (Doc. 1 at 6).  To prevail on a claim for inadequate medical care, an inmate must show that the defendant acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).  Smith categorically fails to state a claim against the named Defendant Corizon and further fails to establish that his denied wound care treatments rose to a constitutional level.

In order for Smith to meet his burden on the objective component of the Eighth Amendment claims, he must demonstrate that an "objectively serious medical need" exists.  *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).  A serious medical need is "considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Id.* (*citing Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) overruled on other grounds in *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1031 n. 8 (11th Cir. 2001)(quotation marks

omitted)). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id.* (citations and quotation marks omitted).

In order to meet the subjective requirement of an Eighth Amendment denial of medical care claim, Smith must demonstrate "deliberate indifference" to a serious medical need. *Farrow*, 320 F.3d at 1243.  "Deliberate indifference entails more than mere negligence.  *Estelle*, 429 U.S. at 106; *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). The Supreme Court held that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S., 825, 837-38, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (emphasis added).  However, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838.  Therefore, "under *Estelle* and *Farmer*, deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow*, 320 F.3d 1235, 1246 (*citing McElligott*, 182 F.3d 1248, 1255)(stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")).

In the present action, it is undisputed that Smith suffered a puncture wound to his left shoulder, which was immediately examined by Dr. Pauparinas at Holman's infirmary and by the Emergency Room physician at Atmore Community Hospital.  (Doc. 17-1 at 7-9, 11).  The medical records confirm that Smith was prescribed medication for pain but no further medical

14

treatment was needed; the wound was cleaned, and Dr. Pouparinas ordered the wound to be "cover[ed] daily until healed." (*Id*. at 10, 12-13, 15-19). On June 20, 2016, during the healing process, Smith's wound was noted as becoming infected, and Dr. Poupainas ordered antibiotic treatment, Clindamycin, for Smith. (*Id*. at 13). Smith received the prescribed medication, and by July 5, 2016, Smith was completely infection free. (*Id*. at 13, 21).

Taking Smith's allegations as true, Smith has failed to carry his burden of establishing a constitutional claim for inadequate medical care. On the first element, it is arguable whether Smith presents an objectively serious medical need. No doubt, a wound infection is considered objectively serious, but Smith's claim of inadequate medical care arises from the allegation that he was denied wound cleaning (which in turn caused him to develop an infection). Consequently, the appropriate question is whether a wound that required no antibiotics, no sutures, and no prescribed treatment at the time it was inflicted is to be considered objectively serious? Without deciding this issue, the undersigned concludes that Smith clearly fails to establish the subjective element of his claim, and, thus, his claim fails.

> That medical malpractice - negligence by a physician - is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v.Gamble*, 429 U.S. 97, 105-07, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless. *See Farmer v. Brennan*, 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams*, 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Xing Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Foster v. Meeks*, CIV. ACT. NO. 2:15cv786-MHT-TFM, 2017 U.S. Dist. LEXIS 16355, *156 (M.D. Ala. Feb. 3, 2017) (quoting *Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999)).

The record before the court is completely void of any evidence that Smith was treated with deliberate indifference regarding his wound care. Smith fails to show, or even allege, that any defendant had subjective knowledge of a risk of harm that was disregarded or ignored, by conduct that was any more than negligence. Indeed, the record confirms that Smith received prompt and substantial care for his injuries, at the time of the incident and upon indication of an infection. *See Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) ("[C]ourts hesitate to find an Eighth Amendment violation" when an inmate "has received medical care."). As such, the record fails to support a claim for deliberate indifference to Smith's medical needs on the part of any medical personnel and, undoubtedly, Corizon.

More importantly, even if Smith's complaint had stated a valid Eighth Amendment claim for inadequate medical care against an individual defendant, he cannot maintain an action against Corizon, as the corporate medical provider on any basis of alleged wrongdoing. "For § 1983 liability to attach to a private corporation providing prison medical care to prisoners, it must be shown that a prisoner's constitutional rights were violated as a result of an established policy or custom of that corporation." *Green v. Preemptive Forensic Health Solutions*, 2015 U.S. Dist. LEXIS 52715, 2015 WL 1826191, at *3 (N.D. Ala. April 21, 2015 (*citing Buckner v. Toro*, 116 F.3d 450 (11th Cir. 1997). "To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice." *See Wayne v. Jarvis*, 1967 F.3d 1098, 1105 (11th Cir. 1999). This requires showing "a practice that is so settled and permanent that it takes on force of law." *Id*. In this instance, Plaintiff has failed to allege, much less offer evidence to show, that a

policy or custom of Corizon contributed to any way to the constitutional violations alleged in his complaint.  In fact, Smith's pleadings are void of any mention of a custom or policy of Corizon in delaying or denying wound care and treatment of inmates.

Because Smith has not shown or alleged a causal relationship between the activities, policies, or customs of Corizon and his alleged constitutional deprivation, the claims against Corizon are due to be dismissed, and it is recommended that Defendant Corizon's Motion for Summary Judgment be granted.

**D. Use of Excessive Force.**

Smith asserts in his complaint that Defendant Brown violated his Eighth Amendment rights when she pushed Smith while Smith was handcuffed with his hands behind his back. Smith claims that the push caused him to trip over a locker box and fall to the floor.  Defendant Brown denies pushing or using any force against Smith.  (Doc. 30-2).

According to Defendant Brown, on July 4, 2016, she instructed Officer Dailey to escort Smith to the health care unit for wound treatment.  (*Id.* at 1).  Officer Dailey radioed Defendant Brown from Smith's cell informing Defendant Brown that Smith refused to be handcuffed to the rear.  (*Id.*).  Given that Smith lacked a profile to be handcuffed to the front, Defendant Brown advised that if Smith wanted to exit his cell he would have to submit to rear handcuffs.  (*Id.*). Smith complied and was escorted towards the healthcare unit.  (*Id.*).  However, as Officer Dailey and Smith passed by Defendant Brown's office, Defendant Brown avers she overheard Smith being argumentative and ordered Smith into the shift office.  (*Id.* at 2).  Defendant Brown questioned Smith about why he could not be handcuffed to the rear and claims

> Smith became belligerent while stating, "Bitch I got stabbed."  [Defendant Brown] ordered inmate Smith the stop his behavior.  Inmate Smith repeatedly called me a Bitch.  [Defendant Brown] then stated, "I'm not going to be too many

more bitches."  Inmate Smith stated, "Fuck You."  [Defendant Brown] instructed Officer Daily to escort inmate Smith back to his assigned cell due to his behavior. Officer Daily then grasp inmate Smith by his arm and inmate Smith refused to move while asking, "Why can't I get my treatment?"  [Defendant Brown] informed inmate smith that he was not going to the Health Care Unit with his aggressive behavior.  I grasp inmate Smith by his other arm and ordered inmate Smith to exit the shift office.  At this time inmate Smith pulled away and fell backwards on a locker box.  Officer Daily helped inmate Smith to his feet and escorted Inmate Smith back to his assigned cell.  I advised inmate Smith that once he stopped his aggressive behavior he would be escorted to the Health Care Unit for treatment.

(Doc. 30-2 at 2).

In response to Defendant Brown's declaration, Smith affirms he did believe he should be allowed front cuffing because his stab wound made it painful to put his arms to the back.  (Doc. 33 at 20).  However, he claims he was compliant with the rear handcuffing, "regardless of the pain."  (*Id*.).  Smith asserts as he was escorted passed the shift office, Defendant Brown called him in and asked him why he wanted to be handcuffed to the front?  (*Id*. at 21).  Smith answered, "because I got a stab wound in my back."  (*Id*.).  According to Smith, Defendant Brown attempted to explain "how rules are still rules", and the two "argued about it back and forth until she sa[id] 'f--- U fag.'  And then [Smith] said "f--- U b----.'"  (*Id*.).  Smith claims Defendant Brown then pushed him over the locker box, and he "banged" into the wall and the office window, causing pain to his head, back, and wrists.  (*Id*.).  Officer Daily assisted Smith up, and followed Defendant Brown's instructions to take Smith back to his cell instead of the health care unit for treatment.  (*Id*.).

Smith states in his response to Defendants' special report:

Again, no body chart.  No incident report.  And no medical treatment for Smith. So if [Smith] wanted to tell his story to anyone he'd better be thinking of a way to do it from his one man cell.  That is the way Brown left him.  So [Smith] contacted PREA.  And an investigation was started.  Now Smith is seeking redress and damages from … this . . . Court.

18

(*Id.* at 15).

The PREA report referenced by Smith shows that on July 5, 2016, Smith brought sexual harassment charges against Defendant Brown, claiming Defendant Brown called him "gay" every time she saw him.  (Doc. 30-12 at 1-2).  Two days later, on July 7, 2016, however, Smith voluntarily waived prosecution of the charges against Defendant Brown.  (Doc. 30-13 at 1; Doc. 30-11 at 1).

To establish a constitutional violation for excessive use of force, Plaintiff Smith must first show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation, meaning defendants' conduct "shocks the conscience," *Lumley v. City of Dade City, Fla.*, 327 F.3d 1186, 1196 (11th Cir. 2003), and, second, Smith must show that "the officials act[ed] with a sufficiently culpable state of mind," i.e., that they acted "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992).  "Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.'" *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)). The factors used to determine whether there has been a violation of the Eighth Amendment in the prison security context are: the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived, any efforts to temper the severity of a forceful response, and the extent of injury suffered.  *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1985)).

Viewing the evidence in the light most favorable to Smith, as it must, *Hairston v.*

*Gainsville Sun Pub. Co*., 9 F.3d 913, 918 (11th Cir. 1993), the undersigned concludes that the amount of force used by Defendant Brown was insufficient as a matter of law to support an excessive force claim even under Smith's version of the events.  The undisputed evidence shows that Smith did not suffer an injury due to the fall.  Although he claims he did suffer head, back, and wrist pain from his fall, he never communicated a need for medical attention – not to Defendant Brown or Dailey, not through a sick call request, and not by complaining to an officer following the incident.  In fact, Smith met with the PREA investigating officer the following day and never mentioned any injury, need for medical attention, or use of force.  Consequently, Smith's conclusory allegation that he suffered pain from hitting the wall and window is not objectively, sufficiently serious for Eighth Amendment purposes.

 In *Hudson v. McMillian*, the Supreme Court rejected the theory that an inmate who alleges excessive use of force is required to show serious injury in addition to unnecessary and wanton infliction of pain. 503 U.S. 1, 10, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992).

> In the excessive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident. . . . That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind."

*Id*. at 8-10 (internal quotations and citations omitted).  Thus, the relevant inquiry under the objective prong of *Hudson* is whether the alleged wrongdoing, in this case a push resulting in a fall over a locker box, was objectively harmful enough to establish a constitutional violation? *See id*. at 8 (In *Hudson* the Court found injuries of bruises, swelling, loosened teeth, and a cracked dental plate were not *de minimis*.).  Additionally, while words alone are not

determinative of bad faith on the part of officers in their use of force, they may be relevant "as part of the totality of the totality of the circumstances" in determining an officer's state of mind. *Bozeman v. Orum*, 422 F.3d 1265, 1271 n.11 (11th Cir. 2005).

The claims in this action closely mirror a number of other cases from the Eleventh Circuit in which the use of force was found to fall short of a constitutional violation.  *See Enriquez v. Landers*, et al., No. 2:02-cv-510-FtM-VMC-SPC, 2005 U.S. Dist. LEXIS 21718, 2005 WL 2405829 (M.D. Fla. Sept. 29, 2005) (inmate claiming unprovoked attacks leaving him with bruising and abrasions was *de minimis* injury suggesting *de minimis* force not sufficient to prove an Eighth Amendment violation); *Springs v. Lagravinese*, No. 2:07-cv-522-FtM-29DNF, 2008 U.S. Dist. LEXIS 39486, 2008 WL 2074415 (M.D. Fla. May 15, 2008) (inmate who was grabbed by the arm, had it twisted behind him and was shoved into his cell did not support a finding malicious and sadistic purpose); *Hall v. Leavins*, No. 3:06cv351/RV/EMT, 2009 U.S. Dist. LEXIS 82582, 2009 WL 2905912 (N.D. Fla. Aug. 18, 2009) (inmate who was choked, shoved and slammed to the floor does not evidence more than *de minimis* force); *Robinson v. Davis*, No. 3:06cv403/RV/EMT, 2008 U.S. Dist. LEXIS 111862, 2009 WL 153162 (N.D. Fla. Dec. 23, 2009) (shoving shackled inmate to the ground, resulting in injury and abrasions to inmate's knee, ankle and toe was *de minimis* use of force and insufficient under the Eighth Amendment standard); *Jones v. City of Dothan*, 121 F.3d 1456, 1460-61 (11th Cir. 1997) (officers slammed man against a wall, kicked his legs apart, forced him to raise his hands above his head; man suffered pain from raising hands due to prior stroke, and from kicking due to arthritic knees, and received medical treatment for knees thereafter; although force was unnecessary, force used and injury inflicted were minor, and excessive force standard would not inevitably lead officer to conclude that force was unlawful, thus officer entitled to qualified

21

immunity); *Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993) (pushing handcuffed individual against a wall, although unnecessary, was not plainly unlawful, and officer entitled to qualified immunity because "it was not clearly established that the amount of force he used . . . was unlawful."); *McCall v. Crosthwait*, 336 F. App'x 871, 2009 U.S. App. LEXIS 14430, 2009 WL 1904146, at *1-2 (11th Cir. July 2, 2009) (officer's use of force and extent of pretrial detainee's injuries were *de minimis* and, therefore, failed to establish a constitutional violation, where officer pushed pre-trial detainee out of jail's elevator, causing him to hit partially open steel cell door and fall against plexiglass window, and detainee suffered bruised shoulder and elbow, for which he received prescription for ibuprofen).[8]

A court must look at the amount of force used "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley v. Henderson*, _U.S. _ , 135 S. Ct. 2466, 2472, 192 L. Ed. 2d 416 (2016). A court "must . . . give a 'wide range of deference to prison officials acting to preserve discipline and security,' including when considering '[d]ecisions made at the scene of a disturbance.'" *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007) (per curiam) (citations omitted). The Eleventh Circuit has repeatedly held that a push or shove that causes pain and necessitates no, or merely minor, medical treatment is not a constitutional violation, even where the prisoner was restrained and no further force was necessary. *See, e.g., Jones v. City of Dothan*, 121 F.3d 1456, 1460-61 (11th Cir. 1997); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1556 (11th Cir. 1993), modified, 14 F.3d 583 (11th Cir. 1994). Furthermore, conclusory allegations of pain, in the absence of further evidence of injury, justifies the conclusion that the use of force on the prisoner

---

[8]    Unpublished cases are not considered binding precedent but may be used as persuasive authority. *See* 11th Cir. R. 36-2.

was minimal.  *Brown v. Smith*, 813 F.2d 1187 (11th Cir. 1987); *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990).

Drawing all inferences in favor of Plaintiff Smith, the undersigned concludes that Defendant Brown acted reasonably under the circumstances.  After evaluating the factors set forth in *Whitley*, the undersigned finds the force used by Defendant Brown was reasonable considering Smith's defiance and belligerence to being handcuffed to the rear, his persistent use of profanity towards her, and that he only suffered a *de minimis* injury.  *See also, Kingsley* 135 S. Ct. at 2473 (citing Graham, 490 U.S. at 396); *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990) (When a prisoner creates a disturbance by failing to follow a prison guard's instructions, it is not unreasonable for the guard to shove him against the wall.).  While Defendant Brown's actions can not be condoned by this court, it is well established that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Graham v. Connor*, 490 U.S. 386, 398, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (quoting *Johnson v. Glick*, 481 F.2d at 1033).  The allegations put forth by Smith do not "shock the conscience" and do not rise to a constitutional level.  Accordingly, the Court finds Defendant Brown is entitled to summary judgment on Smith's claims of excessive force.

As to Defendant Dailey, Smith claims he is liable for failing to intervene on his behalf and stop the excessive force used against him.

When an officer observes excessive force being used against an inmate or suspect and, having both the time and ability to intervene, fails to do so, the officer may be liable for failure to intervene. *Sanchez v. Hialeah Police Department*, 357 F. App'x 229, 234 (11th Cir. 2009) (defendant officer was on the same side of the car as the other officer who began beating plaintiff; Eleventh Circuit found under these facts he could be held liable for failure to intervene

23

under § 1983); *see Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986) ("If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983.").

In the case at hand, however, Smith claims a single push by Defendant Brown caused him to fall over a locker box.  The evidence presented showed that Defendant Dailey immediately helped Smith up and that no other force was used.  Given the totality of the situation, the undersigned determines Defendant Dailey was not in a position to intervene during the complained of incident.  Admittedly, Defendant Dailey was in close proximity to intervene, however, the facts show there was no opportunity.  An unforeseen push does not permit a moment to intervene.  Instead, the record shows Officer Dailey responded reasonably to the incident and helped Smith after his fall.

In the alternative, inasmuch as the court has concluded that no reasonable jury could find that Defendant Brown used excessive force against Smith, no reasonable jury could find that Defendant Officer Dailey was liable for failing to intervene. *Crenshaw v. Lister*, 556 F.3d 1283, 1294 (11th Cir. 2009); *McBride v. Rivers*, 170 F. App'x 648, 658 (11th Cir. 2006)(defendant could not be liable for failing to intervene after court determined no excessive force had been used).

Thus it is recommended that Defendant Dailey be granted summary judgment, and the claims against him dismissed.

## IV. Conclusion.

Based upon the foregoing reasons, it is recommended that Defendants' Motions for Summary Judgment be granted, and Plaintiff Smith's action be dismissed with prejudice.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. Gen.LR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this 8th of February day of  2018.

/s/ Katherine P. Nelson
_____
UNITED STATES MAGISTRATE JUDGE